# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

YPSILANTI ART THEATRE CORP.,
d/b/a Deja Vu Showgirls Ypsilanti; and
M.I.C.  LIMITED INC.,

      Plaintiffs,

v.

CITY OF YPSILANTI; CITY OF YPSILANTI
PLANNING COMMISSION; ANDY
AAMODT, in his Official Capacity as the
City Planner; and JOE MEYERS, in his Official
Capacity as the City of Ypsilanti Director
of Economic Development,

      Defendants.

Case No.:

Hon.:

**Demand for Jury Trial**

---

**PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND
DECLARATORY RELIEF**

---

Matthew J. Hoffer (P70495)
Matt@BradShaferLaw.com
Zachary M. Youngsma (P84148)
Zack@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Suite 2
Lansing, Michigan, 48906
T: 517-886-6560
F: 517-886-6565

*Attorneys for Plaintiffs
Ypsilanti Art Theatre Corp., and
M.I.C. Limited Inc.*

NOW COMES Plaintiffs, Ypsilanti Art Theatre Corp. d/b/a Deja Vu Showgirls Ypsilanti and M.I.C. Limited, Inc., by and through their undersigned counsel, and hereby state for their complaint, the following:

## **INTRODUCTION**

1.     This is a civil action wherein Plaintiffs pray for a declaratory judgment, money damages, attorneys' fees and costs, and injunctive relief to remedy and enjoin ongoing and future actions under color of state law to deprive Plaintiffs of their rights, privileges, and immunities secured to them by the Constitution of the United States. Defendants have engaged in a course of action with the design and intent to delay and prevent Plaintiffs from engaging in First Amendment activity, which this suit seeks to remedy.

2.     Plaintiff M.I.C. Limited, Inc. ("MIC") owns real property located at 29-33 N. Washington Street in Ypsilanti, Michigan (the "Property" and sometimes the "Premises"), which it leases to Plaintiff Ypsilanti Art Theatre Corp. d/b/a Deja Vu Showgirls ("YAT"). Thereat, YAT operated an adult-oriented business on the Property. YAT's business has been continuously operated as a lawful nonconforming use since rendered nonconforming by zoning changed in the mid-1990s. Part of the adult-oriented business YAT operated on the Property, Deja Vu Showgirls Ypsilanti ("Showgirls"), offers constitutionally protected live female performance dance entertainment to the consenting adult public. Another part of the adult-oriented business YAT operated on the Property, Deja Vu Love Boutique ("Boutique"), used to provide an assortment of adult-oriented products to the consenting adult public. In March of 2019, YAT undertook to repair a leaking pipe in the basement bathroom. To do so, YAT's contractor had to remove the existing shower, which it broke in the process. A City inspector noticed the unpermitted repairs and issued a stop-work order and accused YAT of expanding its non-conforming adult regulated use by building in the basement and installing partitions in the Boutique area. YAT's

contractors pulled permits, finished the bathroom repairs, and reopened until March 23, 2020, when, in response to the Coronavirus Pandemic, Governor Whitmer closed nearly every business in Michigan. While closed due to the Pandemic, a fire broke out on July 29, 2020, and damaged the Property. YAT contracted with Moltus Building Group to remediate the fire damage, remodel Showgirls, and reduce the Boutique area. On January 22, 2021, Plaintiffs submitted a site plan of their proposed fire repair and other work (the "Plan") to the City in accordance with the City Ordinances seeking a building permit to complete repairs and remodeling. The City's Ordinances require a decision within 65 days of submission; as of the date of this filing, 98 days after the plan submission, Plaintiffs have not received a decision on its plan. Rather, Plaintiffs have been informed that certain City officials have been told not to issue permits for Plaintiffs' Plan. The City's actions violate Plaintiffs' fundamental rights under the First and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

3.      Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(1), (3)-(4), the latter of which provides, in pertinent part, that:

> district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . .

4.      To the extent that Plaintiffs assert any claim not within this Court's original jurisdiction, jurisdiction to hear said claim is conferred upon this Court pursuant to this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as such claim or claims share a common nucleus of operative facts such that they form

part of the same case or controversy as Plaintiffs' claims that invoke this Court's original jurisdiction.

5. Pursuant to <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156 (1997), any decision Defendants render regarding Plaintiffs' Plan, is reviewable by, and jurisdiction to do so is conferred upon, this Court.

6. The statutory law which further authorizes the institution of this suit, and in particular the damage claims asserted herein, is 42 U.S.C. § 1983 which provides, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, or any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

7. The prayer for declaratory relief is founded in part on Rule 57 of the Federal Rules of Civil Procedure as well as in 28 U.S.C. § 2201, the latter of which provides that:

> . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . .

8. The jurisdiction of the Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. § 2202, the latter of which provides:

> Further necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

9.     Federal question jurisdiction for the request for attorney fees and costs is conferred by 42 U.S.C. § 1988.

10.     This suit is authorized by law to redress deprivations of rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution made under the color of state law and for declaratory and injunctive relief.

11.     No other action, civil or criminal, is pending before any tribunal involving the Plaintiffs regarding the activities and events here.

12.     This suit is authorized to redress deprivations of rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution, and for declaratory and injunctive relief.

13.     Pursuant to 28 U.S.C. § 1391, venue in this Court is proper because both the Plaintiffs and Defendants reside in the Eastern District of Michigan; the injury complained of and acts causing the injury have occurred and will continue to occur in the Eastern District of Michigan; and the property and/or property interests that are the subject of this action is/are situated in the Eastern District of Michigan.

<u>**PARTIES**</u>

*Plaintiffs*

14.     Plaintiff M.I.C. Limited (again, "MIC") is a Michigan Corporation duly organized and authorized to do business in the State of Michigan. MIC owns the real property described as Parcel Number 11-11-40-484-001 in Washtenaw County; commonly known as 29 - 33 N. Washington Street in Ypsilanti, Michigan ("the Property").

15.     Plaintiff Ypsilanti Art Theatre Corp. (again, "YAT") is a Michigan Corporation duly organized and authorized to do business in the State of Michigan. YAT does business as Deja Vu Showgirls Ypsilanti at 29 – 33 N. Washington Street in Ypsilanti, Michigan.

16.   YAT is engaged in, among other things, the presentation of live female performance dance entertainment to the consenting adult public. Such presentation is protected speech and expression under the First Amendment of the United States Constitution and is made applicable to the States through the Fourteenth Amendment of the United States Constitution.

***Defendants***

17.   Defendant City of Ypsilanti (again, the "City") is an incorporated municipality located within and chartered under the laws of the State of Michigan. Defendant City is a home-rule city.

18.   Defendant City of Ypsilanti Planning Commission ("Planning Commission") is a commission formed by the City pursuant to § 122-385, *et seq.*, found in Chapter 122, Article III, Division 7, Subdivision 1 of the Ypsilanti, Michigan Code of Ordinances (the "City Ordinances") as authorized by MCL § 125.3801 *et seq.* and MCL § 125.3101 *et seq.* Pursuant to City Ordinances, § 122-307, Defendant Planning Commission has the authority to approve or deny Plaintiffs' building plans.

19.   Defendant Andy Aamodt ("Aamodt") is the City of Ypsilanti City Planner. Defendant Aamodt has the power to review Plaintiffs' building plans, request additional data, and return the building plans without further process if such materials are incomplete. Defendant Aamodt is sued in his official capacity only.

20.   Defendant Joe Meyers ("Meyers") is the City of Ypsilanti Director of Economic Development. Defendant Meyers has the power to review Plaintiffs' plans and provide comment. Further, Defendant Meyers informed MIC, through its contractor, that the City is not to issue permits for Plaintiffs' plan. Defendant Meyers is sued in his official capacity only.

## RELEVANT ORDINANCE PROVISIONS

21.     A true and accurate copy of Chapter 122, Zoning, of the City of Ypsilanti, Michigan Code of Ordinances (2021) (the "City Ordinances"), is attached hereto as **Exhibit A** and is hereby incorporated by reference as though fully set forth herein.

22.     The City's Ordinances provides the following definition for "Adult regulated uses":

> *Adult regulated uses.* The following are classified as types of adult regulated uses.
>
> (1) *Adult book or supply store* means an establishment having 20 percent or more of its stock in trade or its sales devoted to the distribution, display, or storage of books, magazines, and other periodicals and/or photographs, drawings, slides, films, video tapes, recording tapes, and/or novelty items which are distinguished or characterized by their emphasis on matters depicting, describing, or relating to specified sexual activities or specified anatomical areas. Such establishment or the segment or section devoted to the sale or display of such material in an establishment is customarily not open to the public generally but only to one or more classes of the public, excluding any minor by reason of age.
>
> (2) *Adult mini-motion picture theater* means an enclosed building with a capacity for less than 50 persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas, for observation by patrons therein. Such establishment is customarily not open to the public generally, but only to one or more classes of the public, excluding any minor by reason of age.
>
> (3) *Adult motel/hotel* means a building in which lodging is provided or offered to the public for compensation and which is open to transient guests where the room charge is made by the hour, and/or in which books, magazines and other periodicals or materials which are distinguished or characterized by their emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas, may be sold or rented, or where motion pictures or video tapes with an emphasis on specified sexual activities or specified anatomical areas are available for viewing on an in-room viewing screen or television monitor.
>
> (4) *Adult motion picture theater* or *adult live stage performing theater* means an enclosed building with a capacity of 50 or more persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas for observation by patrons therein. Such establishment is customarily not open to the public

7

generally, but only to one or more classes of the public, excluding any minor by reason of age.

(5) *Cabaret* means an establishment which features any of the following: topless dancers and/or bottomless dancers, strippers, or topless and/or bottomless waitpersons or employees or any other form of nude or partially nude service or entertainment.

(6) *Massage parlor* or *massage establishment* means a place where manipulated massage or manipulated exercises are practiced for pay upon the human body by anyone using mechanical, therapeutic, or bathing devices or techniques, other than the following: a duly licensed massage therapist, physician, osteopath, or chiropractor; a registered or practical nurse operating under a physician's directions; or, registered physical or occupational therapists or speech pathologists who treat patients referred by a licensed physician and operate only under such physician's direction. A massage establishment may include, but is not limited to, establishments commonly known as massage parlors, health spas, sauna baths, Turkish bathhouses, and steam baths. Massage establishments shall not include properly-licensed hospitals, offices of a duly licensed massage therapist, medical clinics, or nursing homes, or beauty salons or barbershops in which massages are administered only to the scalp, the face, the neck or the shoulders; or other establishments that offer massages performed by a duly licensed massage therapist.

(7) *Specified anatomical areas* means portions of the human body defined as follows:

(i) Less than completely and opaquely covered human genitals, pubic region, buttocks, or female breast below the point immediately above the top of the areola; and

(ii) Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

(8) *Specified sexual activities* means the explicit display of one or more of the following:

(i) Human genitals in a state of sexual stimulation or arousal.

(ii) Acts of human masturbation, sexual intercourse, or sodomy.

(iii) Fondling or other erotic touching of human genitals, pubic region, buttocks, or female breast.

City Ordinances, § 122.203 (2021).

23. The City's Ordinances provide the following definition of "Nonconforming Use":

*Nonconforming use* means a use which was lawfully in existence at the effective date of the ordinance from which this chapter is derived, or

amendment thereto, and which does not now conform to the use regulations of this chapter for the zoning district in which it is now located. A nonconforming use may include a use that requires a special use permit under current regulations contained in this chapter, where under previous regulations a special use permit was not required or granted.

City Ordinances, § 122.203 (2021).

24.    The City's Ordinances provide the following regarding continuing a nonconforming use:

Any class B nonconforming use which existed lawfully at the time of the adoption of the ordinance from which this chapter derives and which remains nonconforming and any such use which becomes nonconforming upon the adoption of this article, or of any subsequent amendments thereto, may be continued, subject to the regulations in this article.

City Ordinances, § 122-346 (2021).

25.    The City's Ordinances provide the following in regard to expanding a nonconforming use of a building as well as repairing damage to the same:

(b) *Expansion of class B nonconforming use.*

(1) The nonconforming use of any part of a building or structure must not be expanded or extended into any other portion of such building or structure.

(2) No visible structural alteration must be made to the building or structure devoted to a nonconforming use, except repairs and maintenance work which are required to keep such building in sound condition or as required by law.

(3) An existing structure containing a nonconforming use shall not be enlarged, constructed, reconstructed, moved or structurally altered or extended, unless the use is changed to a use which is permitted in the district in which the structure is located.

*          *          *

(d) *Removal or destruction.* If a building or structure in which a nonconforming use is being conducted is removed, destroyed, or severely damaged to the extent that the cost of restoration of the structure exceeds 100 percent of the state equalized value (SEV) or 50 percent of a higher value established by the most recent appraisal of the structure exclusive of the foundation and land, the nonconforming use shall not be renewed, and any subsequent use of the premises must conform to the use regulations of the district in which the premises are located. . . .

> For the purpose of calculating a fair and equitable cost of restoration regulated by this section, the average of two bid estimates from licensed contractors must be used. All work requiring permits under state and local regulations, and materials necessary to bring the structure up to current code must be included. Clean up costs, demolition, furnishings, appliances, and site work, i.e., landscaping, fencing, paving, shall not be included. The actual repair and reconstruction may be done by the owner or contractor of their choice.

City Ordinances, § 122-349(b) & (d) (2021).

26.     For any construction activity in the City, the City's Ordinances require developers to submit plans of varying degrees of specificity to varying levels of the City officials and boards depending on a number of factors including but not limited to the type of activity, whether the activity is new construction or modification to an existing structure, and whether the activity affects a Special Land Use.

27.     "Adult regulated uses are special land uses." City Ordinances, § 122-431 (2021).

28.     The City's Ordinances provide that "[e]xpansion or intensification of a Special Land Use" requires a "Site" and plan review and a "review & recommend" review from the City Planner to the Planning Commission. Ypsilanti, Michigan Code of Ordinances, § 122-307. The Planning Commission is the approval authority for any such plain. Id.

29.     The City's Ordinances provide that "[t]he city planner or planning commission shall render a decision on a site plan within 65 days of its initial review of the site plan unless an extension of time is agreed to by the city planner or planning commission and the applicant." City Ordinances, § 122-310(d) (2021). Once approved, "[t]he building department shall, upon receipt of notice of approval from the planning commission or city planner and upon application by the applicant, issue a building permit provided all other applicable city regulations have been met." Id. at § 122-312 (2021).

## GENERAL ALLEGATIONS

### Historical Context and Events

30.    MIC purchased the Property in the early 1980s. At that time, the Property's zoning permitted what is now classified as an adult regulated use.

31.    YAT opened for business on the Property in late 1982 as an adult theatre. In 1988, YAT, with permission from the City, ceased operating solely as an adult theatre and converted to presenting live female dance performance entertainment of substantially the same nature as YAT currently offers.

32.    Sometime after 1988, the City amended its zoning ordinance. This amendment changed the Property's zoning to a classification that did not permit what is now classified as an adult regulated use. As a result, pursuant to MCL § 125.3208 and City Ordinances, § 122-346, YAT's use of the Property became a lawful nonconforming use.

33.    From 1988 to 2006, YAT's use of the property included continuing to present live female dance performance entertainment, which the City now regards as the "Cabaret" type of adult use, but also included an adult-oriented novelty and book store, which the City now regards as an "adult book or supply store" type of adult use, and included several private film viewing booths, which the City now regards as an "adult mini-motion picture theater" type of adult use.

34.    The female performance dance entertainment, written materials, and videos YAT offers to the consenting adult public are non-obscene and are presumptively protected speech and expression under the First Amendment of the United States Constitution.  YAT's protected activities and materials appeal to normal, healthy, sexual interests and desires, and are lawfully presented and distributed in conformity with its various licenses, permits, and/or governmental approvals, including, but not limited to, an annual Health Permit issued by the State of Michigan.

35.    On or about January 20, 2006, YAT, through its architect, submitted proposed floor plans to the City to modify the premises. Then, the Property was zoned as B-3, which did not permit adult-oriented businesses. The City issued MIC a letter dated February 13, 2006, indicating that YAT's proposed floor plan called for the expansion of the floor areas of each of the three types of non-conforming adult-regulated use that YAT enjoys and disapproved YAT's proposed floor plan.

36.    A true and accurate copy of the City's February 13, 2006, denial letter is attached hereto as **Exhibit B** and is hereby incorporated by reference as though fully set forth herein.

37.    At some point in late 2009 or early 2010, Plaintiffs again requested permission to remodel various portions of the Property. This time, however, a memo from John R. Jackson to the Director of the City's planning department that determined YAT is "not adding any additional floor area nor [is YAT] replacing any conforming use with any portion of the existing nonconforming use. As a result, the proposed changes do not represent an expansion of the existing legal non-conforming use."

38.    A true and accurate copy of the Jackson Memo is attached hereto as **Exhibit C** and is hereby incorporated by reference as though fully set forth herein.

39.    Currently, the Property is zoned Center (C), which does not permit an adult regulated use as either a Permitted Use or a Special Use.

40.    Since at least 1982, the Property has had a bathroom in the basement.

41.    Since at least 1982, YAT's employees and the entertainers who perform on its premises have used the bathroom in the basement in both its latrine and shower functions. The bathroom is not, and has not been, offered for use by the public.

42.    In March of 2019, Plaintiffs, through their contractor, undertook to repair a leaking pipe in the Property's basement bathroom. Repairing the pipe required removing the existing shower in the basement. During that removal, the

shower broke. While these repairs were underway, a City inspector inspected the property, noticed the construction occurring in the basement, and issued a stop work order until Plaintiffs received permits for the work. On March 27, 2019, and April 2, 2019, the City issued an electrical permit and plumbing permit, respectively, for Plaintiffs to complete the repairs.

43. Around that same time, YAT installed temporary partitions in an area that was previously operating as part of the Boutique.

44. On or about December 13, 2019, MIC received correspondence from the City of Ypsilanti indicating City staff observed an alleged illegal expansion of the nonconforming use the Property currently enjoys; namely, the City alleged:

> The floor plan has been modified in such a manner that has relocated the dressing room to the basement floor, an area determined in previous floor plans as 'currently basement is not used.' Additionally, it appeared that new walls were constructed in the basement below the stage area. These overall changes to the floor plan are in violation of the City of Ypsilanti Zoning Ordinance § 122-349(b)(1) and § 122-349(b)(3).

45. A true and accurate copy of the December 13, 2019, letter from the City of Ypsilanti to MIC is attached hereto as **Exhibit D** and is hereby incorporated by reference as though fully set forth herein.

46. YAT's nonconforming use of the Premises is classified as a Class B nonconforming use pursuant to City Ordinances, § 122-349 because the Premises is non-residential and "[o]nly multiple family dwellings and/or group residence uses in R1, CN-SF, and CN-Mid shall be eligible for this [Class A] designation." City Ordinances, § 122-351 (clarification added).

47. YAT has never abandoned the nonconforming use of the Property, or any part thereof, and plans to resume its constitutionally protected activities at the Property as soon as possible and to the fullest extent possible.

48. On March 23, 2020, pursuant to Governor Whitmer's public health order, YAT closed for business and has remained closed since then.

49.     On July 29, 2020, a fire broke out on the Property and caused physical damage to YAT's office, which occupied a space near the front entrance and in the area used as the Boutique, and to the front entrance. The fire also caused smoke damage to additional areas of the building.

50.     Seeking to repair the fire damage and using it as an opportunity to remodel portions of the Property, MIC hired the Moltus Building Group ("Moltus") to complete the repairs to the premises as well as plan, design, and complete various modifications to the Premise (the "Work").

51.     Aside from repairing the fire damage, the Work calls for moving the entertainer dressing room from its current location into the southeast corner of the current Boutique, establishing an entry control point near the front entrance (the east entrance), and placing the VIP area in the existing entertainer dressing room and a portion of the current Boutique.

52.     The City has taken the position, contrary to the zoning provisions of the City's Ordinances, that part of one type of existing Adult Regulated Use replacing any part of another existing Adult Regulated Use, in the same building, somehow constitutes the expansion of the legal conforming Adult Regulated Use, even where the total area used by the various types of Adult Regulated Use remains unchanged.

53.     None of the Work would visibly alter the structure of the Premises.

54.     On October 8, 2020, MIC received a "Clean Up Notice" from the City based on "[t]rash in doorway on the east side of this property." The notice identifies "litter" to include, among others, "garbage," "paper," and "trash debris."

55.     A true and accurate copy of the October 8, 2020, Clean Up Notice MIC received from the City is attached hereto as **Exhibit E** and is hereby incorporated by reference as though fully set forth herein.

56.     Average wind conditions in Ypsilanti, Michigan in October is between 10 and 11 MPH.

57.     The City's Ordinances require a person wishing to remodel or repair a building to submit a site plan to the City. *See* City Ordinance, § 122-305 *et seq.*

58.     Neither Plaintiffs nor Moltus attended a pre-application conference as outlined in the City Ordinances, § 122-310(a), because the Work is not new construction; rather, it is modification and repair of an existing building.

59.     The fair and equitable cost of repairing the fire damage to the Property does not exceed 100 percent of the state equalized value of the property or 50 percent of a higher value established by the most recent appraisal of the structure.

60.     On January 22, 2021, an employee of Moltus, in accordance with Subdivision I to Division 2 of Article III of Chapter 122 of the City Ordinances, submitted a site plan  (the "Plan") for the Work that fully complied with § 122-309 of the City Ordinances to the City Clerk.

61.     A true and accurate copy of the Plan is attached hereto as **Exhibit F** and is hereby incorporated by reference at though fully set forth herein.

62.     Upon receipt of the Plan, the City Clerk stated the plan should be reviewed with comments within a week.

63.     The Plan, with YAT's pre-existing nonconforming use conducted therein, meets all of the application criteria contained in the City's Ordinances, § 122-311 and all other applicable regulations found in Chapter 122 of the City's Ordinances.

64.     Seventeen days later, on Monday, February 8, 2021, a Moltus employee called the City Clerk to inquire as to the progress of the City's review of the Plan. The City Clerk did not answer and the Moltus employee left a message.

65.     Three days later, on Thursday, February 11, 2021, a Moltus employee telephoned Kurt Weiland, a Building Official with the City's Building Department. Kurt Weiland did not answer the call and the Moltus employee left a voicemail that

inquired as to the status of the Plan review and provided a direct contact number to the Moltus employee.

66.     A day later, on Friday, February 12, 2021, Moltus received a response from Kurt Weiland via e-mail. Therein, Kurt informed Gary Wrubel from Moltus that Kurt was not to review the Plan and any inquiries were to be addressed to Defendant Meyer.

67.     Later that day, Gary Wrubel from Moltus sent Defendant Meyers an e-mail inquiring as to the status of the Plan review. A true and accurate copy of that e-mail chain is attached hereto as **Exhibit G** and is hereby incorporated by reference as though fully set forth herein.

68.     Later that day, Defendant Meyers replied to Gary's e-mail that "[w]e are working with our attorney on many items as it pertains to 31 N. Washington. He has indicated that for now we are not to issue permits on this site." **Exhibit H**.

69.     The City, by and through its Ordinances, placed the substantive limitation of a decision on a site plan within 65 days from submission to the City on the City Planner and Planning Commission; thereby, eliminating their discretion as to how long they may consider a site plan submitted to the City by using the mandatory language "shall render a decision," City Ordinance, § 122-310(d), which establishes the substantive predicate to govern the decision timeline of a site plan submitted to the City.

70.     Upon information and belief, the City has timely processed site plans submitted to it within 65 days; including, having done so during the Pandemic. Plaintiffs make this pleading based on the City's "How to Apply for Permits with the City of Ypsilanti during the COVID 19 Shutdown" guidance available on its website here: https://cityofypsilanti.com/725/COVID-19. Therein, the City states: "Staff is working remotely to administratively review permit applications" and that "Applications that require approval from the Planning Commission (PC) or Zoning

Board of Appeals (ZBA) will be reviewed by staff as received and prepared for the next possible PC or ZBA meeting. Staff can send Zoning verification letters digitally." These statements demonstrate the City's foresight in ensuring timely decisions are made even during the Pandemic. Further, the fact that construction continues within the City during the Pandemic evinces the fact that site plans are being reviewed and permits are being issued even during the Pandemic. Plaintiffs believe specific evidence of other entities which have submitted site plans to the City for review and which the City has issued a decision within 65 days is yet within the possession, custody, and control of the City.

71.    A true and accurate copy of the City's "How to Apply for Permits with the City of Ypsilanti during the COVID 19 Shutdown" is attached hereto as **Exhibit I** and is hereby incorporated by reference as though fully set forth herein.

72.    As it pertains to the Plan, the Work, or the Property in general, neither Plaintiffs nor Moltus is aware of any findings and recommendations completed or submitted by the Department of Community and Economic Development pursuant to City Ordinances, § 122-310(e).

73.    As of the date of this filing, there has been no decision on Plaintiffs' Plan, nor has the City informed any Plaintiff of any such decision.

74.    Plaintiffs are unable to appeal Defendants' decision on their Plan pursuant to City Ordinances, § 12-371 because no such decision has been made.

75.    Neither Plaintiffs nor Moltus nor any employee thereof agreed to an extension to the Plan's review period. *See* City Ordinances, § 122-310(d).

76.    Neither Plaintiffs nor Moltus nor any employee thereof has been advised either verbally or in writing that the planning commission tabled consideration of the Plan until a later meeting as required by the City Ordinances, § 122-310(c).

77.    The Work would not expand YAT's nonconforming adult regulated use into another part of the Premises; rather, the Work would reduce the number of the

types of Adult Regulated Use, thereby, reducing the intensity or degree of the nonconforming use.

78.     As a result of the City's delay in reviewing the Plan, which, in turn, has delayed issuing Plaintiffs a building permit, MIC has been unable to repair the fire damage and YAT has been unable to open its constitutionally protected business.

79.     Any decision on Plaintiffs' Plan rendered by the Defendants would ultimately come before this Court pursuant to City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156 (1997).

80.     On March 19, 2021, with an effective date of March 22, 2021, the Michigan Department of Health and Human Services ("MDHHS") promulgated a new public health order that would permit YAT to reopen but for the unrepaired fire damage as a result of the delayed decision on Plaintiffs' Plan and/or the issuance of a building permit pursuant thereto.

81.     A true and accurate copy of the March 19, 2021, MDHHS public health order is attached hereto as **Exhibit J** and is hereby incorporated by reference as though fully set forth herein.

<u>CAUSES OF ACTION</u>

<u>COUNT I</u>

**DEFENDANTS' RETALIATORY ACTIONS AGAINST PLAINTIFFS VIOLATES THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

82.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

83.     In bringing their First Amendment challenges to Defendants' conduct, Plaintiffs assert not only their own rights, but also the rights of their owners, employees, entertainers who perform on the Property, and their patrons.

84. Defendants' conduct constitutes retaliation and is thus violative of the First Amendment for numerous and various reasons including, but not limited to, the fact that:

a.   YAT's presentation of live female performance dance entertainment is presumptively protected by the First Amendment;

b.   based on a disdain or animus towards the expressive conduct YAT presents, Defendants have undertaken to unreasonably, unnecessarily, and in violation of City Ordinances, delay rendering a decision on Plaintiffs' Plan;

c.   Defendants, through the City Ordinances, have the power to substantially affect Plaintiffs' ability to do business. Their roles in reviewing the Plan, authorizing, and issuing building permits can be, and have been, used to silence unwanted speech and expression—Plaintiffs' included—as well as provide significant financial hardship to lawfully operating businesses by delaying review of the Plan thereby preventing YAT from reopening and MIC from repairing its damaged real property;

d.   since at least July 29, 2019, Defendants have used Plaintiffs' necessity of a building permit to repair the fire damage to the Property as a tool to prevent YAT from presenting its constitutionally protected entertainment at the Property;

e.   upon information and belief, Defendants have rendered decisions on other site plans submitted to it for review by other businesses during the Pandemic, but have refused to do so on Plaintiff's Plan based on a disdain for YAT's speech and expression;

f.   in an effort, to further silence YAT's constitutionally protected speech and expression and in direct contradiction to City actions in late 2009 or early 2010, Defendants, through letters and various in-person and telephonic conversations with Plaintiffs and/or their agents, have maintained

that reducing the Boutique's square footage inside the Property and using that space as a Cabaret constitutes an expansion of the Property's non-conforming use when, in reality, such actions reduce the number of types of adult regulated use at the Property, which, in turn, reduces the intensity or degree of a nonconforming use. Therefore, Plaintiffs' Plan cannot be said to be an expansion of a nonconforming use;

g.       in further effort to silence YAT's constitutionally protected speech and expression, Defendants have purposefully conflated the various types of adult regulated use outlined in the City Ordinances as different adult uses so as to support their claim that modification of the square footage the Cabaret and Boutique occupy inside the Property constitutes an expansion of a nonconforming use when, in reality, Plaintiffs are exchanging one type of adult regulated use for another inside the same building—as it has done in the past without objection from Defendants;

h.       Defendants have sought to use the dictates of the City's Zoning Ordinances to either outright prevent YAT from presenting its constitutionally protected entertainment or significantly stymie YAT's efforts to reopen or to bully YAT into self-censorship while ignoring the requirements the City's Zoning Ordinances place upon Defendants; and

i.       Defendants, via e-mail, stated "for now we [the City] are not to issue permits for this [the Property] site" because the Department of Economic Development was "working with our attorney on many items as it pertains" to the Property; none of which has anything to do with providing a timely decision on Plaintiffs' Plan; rather, such efforts are merely delay tactics on reviewing Plaintiffs' Plan so as to prevent YAT from reopening for as long as possible in hopes of driving YAT out of business based on Defendants' disdain for YAT's presentation of protected speech and expression.

85.     As a direct and proximate result of the Defendants' unconstitutional actions, Plaintiffs, their interests; owners; employees; entertainers who perform on the Property; and patrons have incurred and suffered and will continue to suffer significant substantial and irreparable damages including, but not limited to, the inability to present, view, or associate with First Amendment protected entertainment, as well as damage reputation, damage to goodwill, and lost profits.

86.     Under this Cause of Action, Plaintiffs seek nominal, compensatory, special, and punitive damages against the Defendants for their violations of the constitutional rights of Plaintiffs, YAT's employees, the entertainers who perform at the Property, and YAT's patrons.

87.     Further compounding the irreparable harm brought by the City upon Plaintiffs, due to financial circumstances and constraints as a result of the Pandemic, Defendants would be unable to make Plaintiffs whole through the actual payment of money damages or just compensation thereby causing even monetary harm to effectively be irreparable harm.

## COUNT II

## VIOLATION OF CIVIL RIGHTS CONTRARY TO 42 U.S.C. § 1983

88.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

89.     Plaintiffs allege that Defendants violated Plaintiffs' First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 in numerous and various ways including, but not limited to, by:

    a.     failing to render a decision on Plaintiffs' Plan within 65 days as required by City Ordinance, § 122-310(d), thereby denying Plaintiffs due process of law, both procedural and substantive;

    b.     failing to notify Plaintiffs in any manner or through any medium, let alone in writing, of Defendant Planning Commission's decision to table

consideration of Plaintiffs' Plan until a later meeting as required by City Ordinance, § 122-310(c), thereby denying Plaintiffs due process of law, both procedural and substantive;

c.      infringing upon Plaintiffs' liberty interest created by City Ordinance § 122-310(d) in a timely decision from the Planning Commission on its Plan, thereby denying Plaintiffs due process of law, both procedural and substantive;

d.      unlawfully delaying the review of Plaintiffs' Plan beyond what is required by City Ordinance § 122-310 without due process of law, both procedural and substantive;

e.      unlawfully delaying the review of Plaintiffs' Plan based on disagreement with or disdain for YAT's First Amendment protected speech and expression;

f.      unlawfully delaying the review of Plaintiffs' Plan based on disagreement with or disdain for those wishing to associate with YAT's First Amendment protected speech and expression;

g.      unlawfully delaying the review of Plaintiffs' Plan with the intent to injure Plaintiffs through, among others, forcing the loss of the Property's nonconforming use status, silencing Plaintiffs' protected speech and expression, and/or keeping YAT's business closed so as to drive it out of business;

h.      unlawfully targeting Plaintiffs and delaying their Plan based on animus towards YAT's protected expression;

i.      unlawfully forcing the work stoppage of the bathroom repairs based on animus toward YAT's protected expression predicated on an erroneous reading of the City Ordinances and of YAT's historical use of the basement bathroom; and

j.     unlawfully delaying the review of Plaintiffs' Plan and otherwise delaying or blocking the Work based on animus toward YAT's protected expression predicated on an erroneous reading of the City Ordinances.

90.    Defendants actions, described above, in delaying review of Plaintiffs' Plan, were taken in the course and scope of their official duties and under the color of state law.

91.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiffs have incurred and suffered and will continue to suffer significant substantial and irreparable damages including, but not limited to, the loss of constitutional rights; lost business profits; loss of goodwill and reputation; the inability to present and/or associate with protected First Amendment entertainment; and having to incur costs and attorneys' fees in seeking protection of their constitutional rights asserted herein.

92.    Under this Cause of Action, Plaintiffs seek nominal, compensatory, special, and punitive damages against the Defendants for their violations of the constitutional rights of Plaintiffs, YAT's employees, the entertainers who perform on the Property, and YAT's patrons.

93.    Further compounding irreparable harm, due to financial circumstances and constraints as a result of the Pandemic, Defendants would be unable to make Plaintiffs whole through the actual payment of money damages or just compensation thereby causing even monetary harm to effectively be irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully requests this Honorable Court enter judgment against the Defendants, which would include:

A.     Entry of orders granting a Preliminary and Permanent Injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202 enjoining Defendants, including their officers, employees, agents, representatives, and any and all persons acting by,

through, for, or on behalf of the Defendants, from further delaying a decision on Plaintiffs' Plan;

B.      A declaration that Defendants' delaying a decision on Plaintiffs' Plan was contrary to Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution;

C.      A declaration that the different types of adult regulated use listed in the City Ordinances, § 122-203 that YAT conducted on the Property do not constitute separate nonconforming uses but are, rather, types of the same nonconforming use;

D.      A declaration that YAT's conduct on the Property is entitled to continued nonconforming use status regardless of the type of adult regulated use occurring threat;

E.      A declaration that, pursuant to 42 U.S.C. § 1983, Defendant City is liable to Plaintiffs for the damages caused by the delay in reviewing Plaintiffs' Plan;

F.      Entry of an award of money damages in favor of Plaintiffs in an amount to be determined by the jury;

G.      Entry of an award of nominal damages in favor of Plaintiffs;

H.      Entry of an award of punitive damages in favor of Plaintiffs in an amount to be determined by the jury;

I.      Entry of an award of attorneys' fees and costs incurred herein pursuant to 42 U.S.C. § 1988 in favor of Plaintiffs; and

J.      Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: April 30, 2021                    _____*/s/ Matthew J. Hoffer*_____
                                          Matthew J. Hoffer (P70495)
                                          Matt@BradShaferLaw.com
                                          Zachary M. Youngsma (P84148)*
                                          Zack@BradShaferLaw.com
                                          **SHAFER & ASSOCIATES, P.C.**
                                          3800 Capital City Blvd., Suite 2

Lansing, Michigan, 48906
T: 517-886-6560
F: 517-886-6565

*Attorneys for Plaintiffs*
*Ypsilanti Art Theatre Corp., and*
*M.I.C. Limited Inc.*

*Application       for       Admission
Forthcoming

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: April 30, 2021                    */s/ Matthew J. Hoffer*
                                        Matthew J. Hoffer (P70495)
                                        Matt@BradShaferLaw.com
                                        Zachary M. Youngsma (P84148)*
                                        Zack@BradShaferLaw.com
                                        **SHAFER & ASSOCIATES, P.C.**
                                        3800 Capital City Blvd., Suite 2
                                        Lansing, Michigan, 48906
                                        T: 517-886-6560
                                        F: 517-886-6565

                                        *Attorneys for Plaintiffs*
                                        *Ypsilanti Art Theatre Corp., and*
                                        *M.I.C. Limited Inc.*

                                        *Application for Admission
                                        Forthcoming