# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

YPSILANTI ART THEATRE CORP.,
d/b/a Deja Vu Showgirls Ypsilanti;
and M.I.C. LIMITED, INC.,

     Plaintiffs,

v.

CITY OF YPSILANTI; CITY OF
YPSILANTI PLANNING
COMMISSION; ANDY AAMODT,
in his official capacity as the City
Planner; and JOE MEYERS, in his
official capacity as the City of
Ypsilanti Director of Economic
Development,

     Defendants.

Case No. 5:21-cv-10982
Hon. Judith E. Levy
Magistrate Judge Anthony P. Patti

---

Matthew J. Hoffer (P70495)
Zachary M. Youngsma (P84148)
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Suite 2
Lansing, Michigan 48906
(517) 886-6560
Matt@BradShaferLaw.com
Zack@BradShaferLaw.com
*Attorneys for Plaintiffs*

Lauri B. Stewart (P55014)
Kerr, Russell and Weber, PLC
500 Woodward, Suite 2500
Detroit, MI 48226
(313) 961-0200
lstewart@kerr-russell.com

Scott D. Bergthold (TN 023186)
Law Office of Scott D. Bergthold, P.L.L.C.
2290 Ogletree Ave., Suite 106
Chattanooga, TN 37421
(423) 899-3025
sbergthold@sdblawfirm.com

*Attorneys for Defendants*

---

# DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss this action under *Younger v. Harris,* 401 U.S. 37 (1971). The complaint challenges Ypsilanti's Zoning Ordinance, which the City has been enforcing against Plaintiffs since 2019, and is presently enforcing at the administrative level and through a civil enforcement action for nuisance abatement and injunctive relief in the Washtenaw County Circuit Court.

For the reasons enumerated in the brief below, this Court should abstain from interfering with the ongoing enforcement proceedings and dismiss this action.

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**Issue Presented**

1.      Whether, under the *Younger* abstention doctrine, this Honorable Court should abstain from addressing Plaintiffs' claims against the City of Ypsilanti and the City's ongoing enforcement of its Zoning Ordinance against Plaintiffs, which is occurring both administratively and in state court.

## Summary of Authority for Relief Sought

1. *Younger v. Harris*, 401 U.S. 37 (1971) (emphasizing comity between the state and national governments and instructing district courts to abstain from hearing constitutional claims when doing so would interfere with pending state criminal proceedings)

2. *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (holding that *Younger* applies to state civil proceedings that implicate important state interests, including nuisance proceedings)

3. *Hicks v. Miranda*, 422 U.S. 332 (1975) (holding that *Younger* applies when state proceedings are begun against the federal plaintiff after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court)

4. *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) (applying *Younger* to administrative disciplinary proceedings against lawyer, and setting forth three-part test)

5. *Loch v. Watkins*, 337 F.3d 574 (6th Cir. 2003) (following *Hicks v. Miranda* and applying *Younger* abstention where state civil enforcement action began after federal complaint was filed)

6. *Doe v. Univ. of Ky.*, 860 F.3d 365 (6th Cir. 2017) (applying *Younger* to abstain from hearing challenges to university's procedures governing sexual misconduct hearings)

**Introduction**

Plaintiffs (collectively, "Deja Vu") sue the City of Ypsilanti, its planning commission, and two city employees, over the City's ongoing enforcement of Chapter 122 of the Ypsilanti City Code (the "Zoning Ordinance").

Deja Vu claims that: (1) the City's enforcement of the Zoning Ordinance's generally-applicable nonconforming use restrictions is based on distaste for its form of entertainment (Count I), even though no factual allegation supports that claim; and (2) the City is foot-dragging in approving the "expansion or intensification" of its nonconforming use through the site plan review process (Count II)—even while admitting both that it has *already* made "unpermitted repairs" (triggering the City's "stop-work order") (*see* R. 1 at 2, ¶ 2), and that its nonconforming use is prohibited from expanding, *i.e.*, the cited process does not apply to nonconforming uses. (R. 1 at 9, ¶ 25 (quoting §122-349(b) & (d)).)

Deja Vu filed suit long after the City began enforcing the Zoning Ordinance against Deja Vu. To date, the City has: (1) issued the March 21, 2019 Stop Work Order based on documented Zoning Ordinance violations, including construction at 31 N. Washington St. (the "Property") without a building permit (R. 1 at 2, ¶ 2; *id.* at 13, ¶ 42) (2) determined in December 2019 that Deja Vu engaged in "illegal expansion of the nonconforming use" (R. 1-4 at 1); (3) obtained, and executed, a search warrant issued by the 14A2 District Court of the State of Michigan, and (4)

sued Deja Vu for declaratory judgment, injunctive relief, and nuisance abatement in the Washtenaw County Circuit Court. (Ex. 1, *City of Ypsilanti v. M.I.C., Ltd. et al.,* Civil Action No. 21-000696-CE, "State Court Complaint").

Defendants move to dismiss this suit under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, including *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) and *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). There are ongoing, coercive state proceedings that implicate important state interests and afford the federal plaintiffs an opportunity to raise their constitutional claims as defenses in the Michigan courts.

### Factual Background

In March 2019, City building officials issued a Stop Work Order to Deja Vu because its contractors were making changes to the basement of the building without a building permit. (R. 1, Compl. ¶ 2 ("A City inspector noticed the unpermitted repairs and issued a stop-work order . . . ."); Ex. 1 at 23, Stop Work Order). Deja Vu never obtained a building permit for that construction work.

In November 2019, City staff inspected Deja Vu's premises. (*See* R. 1-4, Director's 13, 2019 Illegal Expansion Letter.) City staff observed that Deja Vu had constructed new walls in the basement below the stage and started using the basement for a dressing room for its employees. (*Id.* at 1.) The basement had previously not been in use. (*Id.* at 1, 4.) The Director also documented that on the

main floor: (a) the women's restroom with shower had been changed into what Deja Vu described at that time as a "storage room," (b) the preexisting main floor dressing room had been changed into what Deja Vu described as "offices" under construction, and (c) a portion of the preexisting adult bookstore space had been converted into the club entrance and more "offices" under construction. (R. 1-4 at 1-4.) The Director's December 2019 letter informed Deja Vu that it had engaged in "an illegal expansion of the nonconforming use" at the Property. (*Id*. at 1.)

Deja Vu did not appeal that determination per the Zoning Ordinance. (R. 1-1 at 69, §122-371.) Instead, Deja Vu continued its illegally expanded operations until March 2020, when Deja Vu claims that it closed under a COVID-19 order.

In July 2020, a fire broke out at the Property. The fire and smoke, and the water used to put out the fire, caused extensive damage to the Property. On July 29, 2020, the Fire Marshall entered the property and took pictures of the damage.

After the zoning staff's efforts to obtain a voluntary inspection of the premises concerning the unlawful expansion failed, the City applied for a search warrant from the 14A2 District Court. In October 2020, the City obtained a search warrant to inspect the Property and document violations of the Zoning Ordinance and other City Code provisions.

On November 20, 2020, City staff inspected the Property. (Ex. 1 at 8, 45.) The inspection revealed that Deja Vu had made additional unpermitted structural

changes to the Property. The dressing room, which had been on the main floor, had

in fact been completely relocated to the basement and included a new shower

(where two toilet stalls had been demolished without a permit), a toilet area, and a

laundry area. (*Id.*) On the main floor, the entire north side of the building between

the service doors and the northwest entrance (where the dressing room had

previously been) was remodeled with wall partitions, electrical wiring, and

drywall. Additionally, the entrance area at the front east side (where the adult

bookstore and entrance area was) had been reduced to accommodate the new

rooms / booth areas. City staff also observed, throughout the building, where

various permits, including building permits, were required and not obtained. (Ex.

*Id.*) During the inspection, a Deja Vu manager (Chris Corwin) revealed to City

staff that Deja Vu's insurance provider paid out $400,000 to repair the Property.

On January 21, 2021, Deja Vu submitted an (incomplete) building permit

application. Deja Vu submitted a portion of this application as Exhibit F to its

complaint here. (R. 1-6 at 1-2.) Deja Vu tells the Court that 15 years ago, the City

denied its 2006 expansion request (*see* R. 1-2 at 3)—but Deja Vu does not include

the preexisting floor plan (the previously-grandfathered one) that it submitted with

the 2006 earlier application. (*See* Ex. 1 at 15-17, 2006 Floor Plan of Deja Vu.)

What Deja Vu did submit this year, however, discloses more of the real story

of Deja Vu's unlawful expansion in 2019 and 2020. The unpermitted construction

previously represented to be "storage" and "office" areas are shown in the 2021 building permit application for what they are:  seven new "VIP" rooms for Deja Vu's cabaret use—three of which (#1, #2, and #5) occupy the space where the dancers' dressing rooms used to be, and four of which (#3, #4, #6, and #7) occupy space previously devoted to the adult book and supply store use. (*See* R. 1-6 at 1 (upper right quadrant of page), 2 (upper right quadrant of page).)

Having documented Deja Vu's illegal expansion and extension of its nonconforming use in 2019 and 2020, along with other Zoning Ordinance violations, City staff communicated to Déjà vu that it was investigating the status of the property.

Deja Vu thereafter filed this lawsuit. It recites speech-related claims, but alleges no facts to support claimed "animus toward the expressive conduct" Deja Vu presents. (R. 1 at 19, ¶ 84.b.) Instead, the City has followed the Zoning Ordinance's restrictions on nonconforming uses.

Thus, the gravamen of Deja Vu's complaint turns on this state-law issue involving the interpretation of a local zoning ordinance. (*See, e.g.*, R. 1 at 20, ¶ 84.g. ("Plaintiffs' Plan cannot be said to be an expansion of a nonconforming use."); *id.* at 21, ¶ 89.a. (claiming that the site plan review process for expanding a land use applies to Deja Vu, even though Deja Vu is a nonconforming use that is prohibited from expanding per §122-349(b), (d) (quoted at R. 1 at 9, ¶ 25)).)

On June 28, 2021, the Director sent a Zoning Enforcement Action letter to Deja Vu. (Ex. 1 at 43-45, "2021 Zoning Enforcement Action".) The letter explained that: (a) Deja Vu's application was for a building permit, not a site plan, because a site plan involves a different form and requires much more information; (b) as a building permit application, the application was incomplete; (c) Deja Vu has lost its right to continue a nonconforming use by virtue of its Zoning Ordinance violations, including illegal expansion and extension of its nonconforming use and its illegal construction without building permits; (d) Deja Vu has lost its right to continue a nonconforming use because the cost of restoration of the building after the extensive damage caused by the fire exceeds the relevant thresholds in the Zoning Ordinance; and (e) violations of the Zoning Ordinance constitute a nuisance per se under Michigan statutory law and the Zoning Ordinance. (*Id.*)

On July 1, 2021, the City of Ypsilanti sued Deja Vu under state law in the Washtenaw County Circuit Court. The City seeks: (1) a declaratory judgment that Deja Vu, by its own actions and, separately, as a result of the fire, has lost any right it may have had to continue a nonconforming use at the Property, (2) a declaration that continuance of any nonconforming use at the Property is a nuisance per se, and an order abating same, and (3) an injunction preventing Deja Vu from continuing a nonconforming use at the Property. (Ex. 1 at 13.)

**Argument**

**I.** ***Younger* abstention bars maintenance of Deja Vu's federal suit.**

The *Younger* doctrine serves to prevent federal courts from interfering with criminal prosecutions and civil enforcement actions in state courts, and to preserve federalism and the comity between the state and national governments. *Doe v. Univ. of Ky.*, 860 F.3d 365 (6th Cir. 2017). This sensitivity to federalism recognizes "a proper respect for state functions," and the rule that state courts should be "left free to perform their separate functions" without undue interference from the federal courts. *Younger*, 401 U.S. at 44.

In *Younger*, the Supreme Court held that a federal court should abstain from interfering with state criminal proceedings as long as those proceedings allow the federal plaintiff "an opportunity to raise his constitutional claims" as defenses in the state court. 401 U.S. at 49. The Court subsequently held that *Younger* applies in three circumstances: (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving certain orders that further a state's ability to perform its judicial functions. *New Orleans Public Services, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68 (1989) ("*NOPSI*").

When one of those three circumstances is present, the federal court applies the three-factor test in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), to determine whether abstention is warranted.

11

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81-82 (2013).  As the Supreme

Court framed the test:

> The question in this case is threefold: *first*, do [the state proceedings]
> constitute an ongoing state judicial proceeding; *second*, do the
> proceedings implicate important state interests; and *third*, is there an
> adequate opportunity in the state proceedings to raise constitutional
> challenges.

*Middlesex*, 457 U.S. at 432.

*Younger* applies here because all these elements are met.

### A.   The City's coercive state court action for nuisance abatement and injunctive relief is a state enforcement action that triggers *Younger*.

The Supreme Court has held that *Younger* abstention applies where federal

plaintiffs face state civil proceedings that are "'akin to a criminal prosecution' in

'important respects.'" *Sprint*, 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420

U.S. 592, 604 (1975) (requiring abstention under *Younger* in deference to nuisance

action against adult bookstore)).

The Court explained:

> Such enforcement actions are characteristically initiated to sanction the
> federal plaintiff, *i.e.,* the party challenging the state action, for some
> wrongful act. *See, e.g., Middlesex,* 457 U.S. at 433-434 (state-initiated
> disciplinary proceedings against lawyer for violation of state ethics rules).
> In cases of this genre, a state actor is routinely a party to the state
> proceeding and often initiates the action. *See, e.g., Ohio Civil Rights
> Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619 (1986) (state-
> initiated administrative proceedings to enforce state civil rights laws) . . . .

*Sprint*, 571 U.S. at 79.

The City's suit against Deja Vu in state court is squarely within this category.

The Zoning Ordinance that the City is enforcing in its state action provides that: (1) a violation is an "offense," and may be fined (R. 1-1 at 69, §122-375); (2) any building or structure used in violation of the Zoning Ordinance is a public nuisance per se (*Id.*); and (3) the City is authorized to institute an action "for an injunction or other process against a person to restrain, prevent or abate" a violation of the Zoning Ordinance. (*See* Code Section 1-15)).

Thus, City's enforcement proceeding seeks to sanction Deja Vu for acts that are not just "wrongful," *Sprint*, 571 U.S. at 79, as in *Middlesex* (ethics violations), but also illegal. *See also* MCL 125.3407 (declaring a violation of a municipal zoning ordinance to be a nuisance per se and authorizing penalties).

Deja Vu has illegally expanded and extended its nonconforming use of the Property such that it has extinguished any right it may have had to use the Property as a nonconforming use. (R. 1-1 at 56-58, §122-349.) Yet, Deja Vu intends to further extend its nonconforming use and operate it there for many more years.

Count 1 of the City's state court complaint seeks a declaration that Deja Vu has extinguished any right it may have had to conduct a nonconforming use at the Property. (Ex. 1 at 10-11.) Count 2 seeks relief under MCL 125.3407 and the Zoning Ordinance to abate the nuisance of continuing any nonconforming use. (*Id.* at 11-12.) Count 3 seek the remedy of an injunction against Deja Vu's maintenance of a nonconforming use at the Property. (*Id.* at 12-13.)

13

These features show that the City's state injunction and nuisance abatement action against Deja Vu is a coercive, civil enforcement proceeding to sanction the federal plaintiff for a wrong. Like the state proceedings in *Huffman*, *Middlesex*, and *Ohio Civil Rights Commission*, the City's state court proceeding to enforce state law and the City's Zoning Ordinance triggers *Younger* abstention.

**B.   The City's civil enforcement proceeding meets the *Middlesex* factors for *Younger* abstention.**

**1.   The state court lawsuit against Deja Vu is ongoing.**

Under the first prong of the *Middlesex* test, the City's state-court action for injunctive relief and nuisance abatement constitutes an ongoing judicial proceeding. *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (applying *Younger* to civil nuisance proceeding resulting in injunction).

> When a person is the target of an ongoing state action involving important state interests, a party cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. If the state party files such a case, *Younger* abstention requires the federal court to defer to the state proceeding.

*Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006).

In *Hicks v. Miranda*, 422 U.S. 332, 349 (1975), the Supreme Court held that "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."

Just as *Younger* has been extended to coercive civil proceedings, so has the principle set forth above in *Hicks*. *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003) (abstaining under *Younger* where coercive state civil proceeding was filed after the federal suit "but before any proceedings of substance of the merits have taken place in the federal court") (quoting *Hicks*, 422 U.S. at 349).

The City has been enforcing its Zoning Ordinance against Deja Vu since well before Deja Vu filed this federal case. In the eighteen months preceding the filing of Deja Vu's federal lawsuit, the City issued a Stop Work Order against Deja Vu's expansion and construction, determined that Deja Vu's expansion of its nonconforming use was illegally, and obtained a search warrant to document its Zoning Ordinance violations. Thereafter, the City issued the Zoning Enforcement Action detailing that Deja Vu's actions, and separately, the 2020 fire, terminated any right Déjà vu may have had to continue a nonconforming use at the Property. The City also brought the coercive civil proceeding in state Court to enforce the nonconforming use restrictions in the Zoning Ordinance and to abate the nuisance created by Deja Vu's violations of the Zoning Ordinance.

The pending state proceedings against Deja Vu are ongoing, and satisfy the first prong for *Younger* abstention as set forth in the *Middlesex* test. *Hicks*, 422 U.S. at 349.

15

2.    **The City's civil enforcement proceeding also implicates important state interests.**

Abating the nuisance and securing compliance with the Zoning Ordinance restrictions on nonconforming uses at Deja Vu's location serves important governmental interests. The Zoning Ordinance itself serves the "provisions, goals, and values as adopted in the City of Ypsilanti Master Plan" and regulates "the use of land, buildings, and structures to promote the public health, safety, and welfare." (R. 1-1 at 1, §122-100.)

Moreover, because nonconforming uses are "incompatible with permitted uses," the zoning ordinance states that nonconforming uses "shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures or uses prohibited in the district." (R. 1-1 at 55, §122-345(b).) "It is the policy of this state and a goal of zoning that uses of property not conforming to municipal zoning ordinances be gradually eliminated." *Jerome Township v. Melchi*, 184 Mich. App. 228, 231, 457 N.W.2d 52, 54 (1990).

Thus, the City's civil enforcement action also meets the second part of the *Younger/Middlesex* test.

3.    **The City's civil enforcement action provides Deja Vu an opportunity to present its constitutional claims.**

The City's action in Washtenaw County Circuit Court provides an adequate forum for Deja Vu to raise its constitutional challenges. The circuit court is one of

general jurisdiction, and it has the plenary authority to adjudicate constitutional claims against the City's regulations and actions that Deja Vu seeks to challenge.

Deja Vu can raise those challenges as defenses in state court to the City's action for injunctive relief and nuisance abatement. *Cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy."). In fact, "a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims." *Middlesex*, 457 U.S. at 432 (quoting *Moore v. Sims*, 442 U.S. 415, 425-26 (1979)).

Here, Deja Vu argues that provisions in state law (e.g., the nonconforming use provisions of the City's Zoning Ordinance) affirmatively permit its remodeling plan. Deja Vu contends that its expansion into the basement, and its construction of new VIP rooms on the main floor, have not violated the restrictions applicable to nonconforming uses. Indeed, Deja Vu goes further, arguing that its plans to build a new dancer dressing room in the bookstore area, and to otherwise extend the life of its nonconforming use for many years cannot be said to be an unlawful expansion or extension. The City, of course, takes the opposite position on these issues of state law, arguing that Deja Vu has forfeited its nonconforming use rights and is complaining about delay in processing an application that is not even complete— and would not apply to Deja Vu's nonconforming use even if it were complete.

17

The state law issues are determinative. If Deja Vu has lost its nonconforming use right, then it is not allowed to continue its nonconforming use at the Property. But either way, the Michigan state court has concurrent jurisdiction over claims brought under 423 U.S.C. §1983, and is fully competent to resolve Deja Vu's constitutional claims when they are raised as defenses to the City's coercive suit.

Therefore, the ongoing state proceeding also meets *Younger/Middlesex*'s third prong.

### C.   None of *Younger*'s narrow exceptions applies.

None of the very limited exceptions to the *Younger* doctrine applies here.

First, Deja Vu's constitutional claims do not preclude the application of *Younger*, which itself was a First Amendment case. The Supreme Court explained that even "the possible unconstitutionality of a statute 'on its face' does not" justify an injunction against its enforcement, where the federal plaintiff has "failed to make any showing of bad faith" by the federal defendant. *Younger*, 402 U.S. at 55; *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975).

The Zoning Ordinance is not "'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" *Younger*, 401 U.S. at 53-54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)). Almost all cities in Michigan have similar restrictions against expanding or

extending nonconforming uses, engaging in construction work without first securing a building permit, etc. The Zoning Ordinance is not a species of law like that described in *Watson v. Buck*.

Second, besides being unable to show that the laws at issue are flagrantly unconstitutional, Deja Vu cannot show that the City brought its action for injunctive relief and nuisance abatement in bad faith. A "bad faith" showing is a very "narrow exception[] to the doctrine that federal courts should not interfere" with coercive state proceedings, and has been found only in extraordinarily rare circumstances. *See, e.g.*, *Dombrowski v. Pfister*, 380 U.S. 479 (1965) (finding bad faith where state officials arrested civil rights activists and charged them under a facially unconstitutional law, raided their offices and seized their records, and then continued to threaten future prosecutions even after a state court invalidated the warrants and the raid). "Those [*Dombrowski*] types of threats, or other similar actions, are not alleged here, and as such, the district court was correct in finding *Younger* abstention precluded its involvement in the case." *Doe v. University of Kentucky*, 860 F.3d 365, 371 (6th Cir. 2017).

Here, after initiating administrative action (Stop Work Order) that did not secure compliance with the Zoning Ordinance's nonconforming use restrictions, the City informed Deja Vu that it had illegally expanded in violation of those restrictions. Thereafter, the City obtained a warrant from state court that resulted in

an inspection revealing even more violations. Ultimately, the Director detailed the reasons why any right to continue a nonconforming use at the Property has been terminated, and the City brought a civil coercive proceeding seeking relief under the Zoning Ordinance and state law. It has not padlocked the business or taken strict enforcement action as it seeks judicial relief in state court, nor has it engaged in any objectively outrageous behavior like that detailed in *Dombrowski*.

For these reasons, *Younger* abstention applies, and the Court should dismiss Deja Vu's complaint, without prejudice, in deference to the pending state court action.

## Conclusion

*Younger*'s elements are met, and none of its exceptions apply. Thus, the City of Ypsilanti respectfully requests that this Court grant its motion to dismiss.

As required by E. D. Mich. LR 7.1, undersigned counsel conferred with counsel for Plaintiffs, explained the nature and legal basis of this motion, and requested but did not obtain concurrence in the relief sought.

Dated: July 6, 2021                        Respectfully submitted,

**LAW OFFICE OF SCOTT D.**
**BERGTHOLD, P.L.L.C.**

By:     /s/ *Scott D. Bergthold*
        Scott D. Bergthold (TN 023186)
        Law Office of Scott D. Bergthold,
        P.L.L.C.
        2290 Ogletree Ave., Suite 106

Chattanooga, TN 37421
(423) 899-3025
sbergthold@sdblawfirm.com

Lauri B. Stewart (P55014)
500 Woodward, Suite 2500
Detroit, MI 48226
(313)961-0200
lstewart@kerr-russell.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021 I electronically filed the foregoing

document with the Clerk of the Court using the ECF system which will send

notification of said filing to all filing users indicated on the Electronic Notice List

through the Court's electronic filing system.

/s/ *Scott D. Bergthold*
Scott D. Bergthold (TN 023186)
Law Office of Scott D. Bergthold, P.L.L.C.

21