# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

---

YPSILANTI ART THEATRE CORP.,
d/b/a Deja Vu Showgirls Ypsilanti; and
M.I.C. LIMITED INC.,

      Plaintiffs,

v.

CITY OF YPSILANTI; CITY OF
YPSILANTI PLANNING COMMISSION;
ANDY AAMODT, in his Official Capacity
as the City Planner; and JOE MEYERS,
in his Official Capacity as the City of
Ypsilanti Director of Economic
Development,

      Defendants.

Case No.: 5:21-cv-10982

Hon.  Judith E. Levy
Hon.  Anthony P. Patti
      by referral

---

## PLAINTIFFS' RESPONSE AND BRIEF
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Doc. 9)

---

Matthew J. Hoffer (P70495)
Matt@BradShaferLaw.com
Zachary M. Youngsma (P84148)
Zack@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Suite 2
Lansing, Michigan, 48906
T: 517-886-6560
F: 517-886-6565

*Attorneys for Plaintiffs*

Lauri B. Stewart (P55014)
Kerr, Russell and Weber, PLC
500 Woodward, Suite 2500
Detroit, MI 48226
T: 313-961-0200
lstewart@kerr-russell.com

Scott D. Bergthold (TN 023186)
Law Office of Scott D. Bergthold,
P.L.L.C.
2290 Ogletree Ave., Suite 106
Chattanooga, TN 37421
T: 423-899-3025
sbergthold@sdblawfirm.com

*Attorneys for Defendants*

**<u>RESPONSE TO DEFENDANTS MOTION TO DISMISS (Doc. 9)</u>**

NOW COME Plaintiffs Ypsilanti Art Theatre Corp., and M.I.C. Limited, Inc., by and through their undersigned counsel of record, and in response to Defendants' Motion to Dismiss (Doc. 9) hereby request that the Court DENY IN FULL Defendants Motion.  Defendant Ypsilanti's meritless state court complaint fails to trigger abstention under <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and if it did, falls within the bad faith exceptions to <u>Younger</u>.  If abstention were appropriate, a stay rather than dismissal would be appropriate due to the nature of Plaintiffs' federal claims, including claims for damages under 42 U.S.C. § 1983.

In support, Plaintiffs rely upon the accompanying brief in support, any further briefing, any materials submitted with the briefing, the records as a whole, and any oral argument entertained by the Court.

## PLAINTIFFS' BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS


### ISSUES PRESENTED

1.    Whether abstention pursuant to <u>Younger v. Harris</u>, 401 U.S. 37 (1971) is triggered and whether this Honorable Court should abandon its virtually unflagging obligation to exercise its jurisdiction where, as here, Plaintiffs raise federal question First and Fourteenth Amendment claims brought under 42 U.S.C. § 1983 and a Defendant has filed a perfunctory state court action in response to the federal action, which only seeks to order Plaintiff to continue following the law.


2.    Whether, based on Defendants' progressively aggressive retaliatory conduct towards Plaintiffs, meritless state court complaint, and forum shopping, this Court should decline <u>Younger</u> abstention based on the bad faith and harassment exception.


**3.**    If this Court decides abstention under <u>Younger</u> is proper, whether this Court should stay or dismiss the instant matter.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. As to whether Defendant Ypsilanti's state court action triggers <u>Younger</u> abstention:
   - <u>Younger v. Harris</u>, 401 U.S. 37 (1971)
   - <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 571 U.S. 69 (2013)
   - <u>Exec. Art Studio, Inc. v. City of Grand Rapids</u>, 179 F. Supp. 2d 755 (W.D. Mich. 2001) <u>aff'd</u>, 391 F.3d 783 (6th Cir. 2004)

2. As to whether the bad faith exception to <u>Younger</u> applies:
   - <u>Doe v. Univ. of Ky.</u>, 860 F.3d 365 (6th Cir. 2017)
   - <u>Cullen v. Fliegner</u>, 18 F.3d 96 (2d Cir. 1994)
   - <u>Lewellen v. Raff</u>, 843 F.2d 1103 (8th Cir. 1988)
   - <u>Show-World Ctr., Inc. v. Walsh</u>, 438 F. Supp. 642 (S.D.N.Y. 1977)
   - <u>Taylor Novelty & Toy v. City of Taylor</u>, 1988 U.S. Dist. LEXIS 19440 (E.D. Mich. Mar. 7, 1988)

3. As to whether, if abstention were appropriate, this Court should dismiss or stay the action:
   - <u>Carroll v. City of Mount Clemens</u>, 139 F.3d 1072 (6th Cir. 1998)
   - <u>Los Altos El Granada Investors v. City of Capitola</u>, 583 F.3d 674 (9th Cir. 2009)
   - <u>Knick v. Township of Scott, Pennsylvania</u>, --- U.S. ---, 139 S. Ct. 2162, 2167 (2019)

**INTRODUCTION**

In conspicuous response to the present suit, Defendant City of Ypsilanti ("Ypsilanti" or the "City") filed a retaliatory suit against Plaintiffs in state court with the improper purpose of manufacturing abstention. In short, the City has asked the state court to enjoin the operation of a business Defendants have already unlawfully and unconstitutionally prevented from operating.

The City's ill-conceived state court suit is nothing more than a bad faith continuation of Defendants' retaliation against Plaintiffs designed to further punish them for persisting to seek to engage in First Amendment activity. The state action lacks merit and, since it only requests that the state court defendants be ordered to continue following the law, lacks the coercive aspect necessary to qualify as a civil enforcement action that could trigger Younger abstention.

Even if Younger applied, the suit would fall within the bad-faith exception to Younger because it lacks merit and was filed for the purposes of harassing Plaintiffs and forum-shopping.

Further, if the Court was inclined to abstain pursuant to Younger, it would be appropriate to stay the suit rather than dismiss it.  A stay would be more appropriate because Plaintiffs' federal claims include claims for damages, which will continue independently once the City's meritless nuisance action is dismissed.

5

## STATEMENT OF FACTS

Plaintiff M.I.C. Limited ("MIC") owns real property in Ypsilanti, Michigan (the "Property"), which it leases to Plaintiff Ypsilanti Art Theatre Corp. ("YAT"). Plaintiff YAT d/b/a Deja Vu Showgirls has historically operated a business out of the Property that features written materials, videos, and the presentation of live female performance dance entertainment available to the consenting adult public. [Doc. 1, Verified Complaint for Damages, Injunctive Relief, and Declaratory Relief ("Compl."), at ¶¶ 15, 16, 33-34]. The written materials, videos, and female performance dance entertainment YAT offers are non-obscene and are presumptively protected speech and expression under the First Amendment of the United States Constitution. [Id. at ¶ 34].

MIC originally purchased the Property in the early 1980s when the Property's zoning permitted what is now classified as an adult regulated use, which is considered a special land use. [Id. at ¶ 30; City Ordinances, §§ 122-431; 122-500; 122-512(g)]. In late 1982, YAT opened an adult theatre on the Property. In 1988, YAT, with permission from the City, ceased operating solely as an adult theatre and converted to presenting live female dance performance entertainment of substantially the same nature that YAT currently offers. [Id. at ¶ 31]. Sometime after 1988, the City amended its zoning ordinance so that the Property's zoning classification did not permit adult regulated use. [Id. at ¶ 32]. As a result, pursuant to MCL § 125.3208 and City Ordinances, § 122-346, YAT's use of the Property became a lawful nonconforming use. Id. From 1988 to 2006, YAT's use of the property included continuing to present live female dance performance entertainment, which the City now regards as "Cabaret" type of adult use, but also included an adult-oriented novelty and book store (the "Boutique"), which the City now regards as an "adult book or supply store" type of adult use, and several private

6

film viewing booths, which the City now regards as "adult mini-motion picture theater" type of adult use. [Id. at ¶ 33].

On or about January 20, 2006, YAT, through its architect, submitted proposed floor plans to the City to modify the premises. The City disapproved those plans in a letter to MIC dated February 13, 2006. [Id. at ¶ 35; Doc. 1-2]. In 2009 or 2010, YAT again submitted plans to the City to remodel the Property. [Id. at ¶ 37]. After a review of the plans and a site visit, in a memo [Doc. 1-3], the City concluded that YAT was "not adding any additional floor area nor [is YAT] replacing any conforming use with any portion of the existing nonconforming use." [Id. at ¶ 37]. The City concluded, "[a]s a result, the proposed changes do not represent an expansion of the existing legal non-conforming use." [Id.].

Currently, the Property is zoned Center (C), which does not permit an adult regulated use as either a permitted use or a special use. [Id. at ¶ 39]. Since at least 1982, the Property has had a bathroom in the basement, used by YAT's employees and the entertainers who perform on its premises as both a latrine and shower. [Id. at ¶¶ 40, 41]. The bathroom is not, and has not been, offered for use by the public. [Id. at ¶ 41].

In March of 2019, Plaintiffs undertook to repair a leaking pipe in the Property's basement bathroom. [Id. at ¶ 42]. To do so, YAT's contractor had to remove an existing shower in the basement, which broke in the process. [Id.]. A City inspector noticed the unpermitted repairs and issued a stop-work order and accused YAT of expanding its non-conforming adult regulated use by building in the basement and installing partitions on the main floor. [Id.]. On March 27, 2019, and April 2, 2019, the City issued an electrical permit and plumbing permit, respectively, for Plaintiffs to complete the basement repairs. [Id.].

Around the same time as these repairs, YAT installed temporary partitions in an area that was previously operating as part of the Boutique. [Id. at ¶ 43]. On or

about December 13, 2019, MIC received correspondence [Doc. 1-4] from the City indicating City staff observed an alleged illegal expansion of the Property's nonconforming use relating to these partitions. [Compl., at ¶ 44].

On January 22, 2021, Plaintiffs submitted a site plan (the "Plan") to the City via the City Clerk in accordance with Subdivision 1 to Division 2 of Article III of Chapter 122 of the City Ordinances, that fully complied with § 122-309 of the City Ordinances. [Id. at ¶ 60]. The purpose of the Plan was to make repairs required after a July 29, 2020, fire that damaged the Property and to take the opportunity to remodel portions of the Property. [Id. at ¶¶ 49, 50]. The fair and equitable cost of repairing the fire damage to the Property does not exceed 100 percent of the state equalized value of the property or 50 percent of a higher value established by the most recent appraisal of the structure. [Id. at ¶ 59]. Aside from repairing fire damage, the Plan calls for moving the entertainer dressing room to the southeast corner, establishing an entry control point near the front entrance, and placing the VIP area in the existing entertainer dressing room. [Id. at ¶ 51].

Upon receipt of the Plan, the City Clerk stated the plan should be reviewed with comments within a week. [Id. at ¶ 62]. Seventeen days later, Gary Wrubel, an employee of Moltus, YAT's contractor, inquired into the City's progress on review of the plan and did not receive a response. [Id. at ¶ 64]. On June 28, 2021, Defendant Meyers sent Plaintiffs a letter entitled "Zoning Enforcement Action – Loss of nonconforming use status – 31 N. Washington St. (11-11-40-484-001)" that opined that the Property has lost its nonconforming use status due to, among other things, Plaintiffs' permitted basement repairs and acclaimed "structural[] alter[ations]." [**Exhibit 1**[1], State Court Complaint ("SCC") pp. 43-45 (being Ex. G thereto)]. Meyers' letter also states Plaintiffs' Plan was incomplete and if it were complete it

---

[1] Defendant's failed to even attach a copy of Ypsilanti's meritless complaint to their Motion to Dismiss [Doc. 9].

would be denied because the Property lost its nonconforming use status. Id. Prior to Defendant Meyers' opinion letter, Plaintiffs only received two responses from the City regarding the Plan. First, Kurt Weiland, a Building Official with the City's Building Department, responded to an email from Gary Wrubel [Doc. 1-7] that Kurt was not to review the Plan and any inquiries were to be addresses to Defendant Meyer. [Compl., at ¶ 66]. Second, Defendant Meyer responded to an email sent from Gary Wrubel inquiring on the status of the revised floor plan for review that "[w]e are working with our attorney on many items as it pertains to 31 N. Washington. He has indicated that for now we are not to issue permits on this site." [Doc. 1-8].

As of the date of this filing, there has been no decision on Plaintiffs' Plan, nor has the City informed any Plaintiff of any such decision. The City, by and through its Ordinances, placed the substantive limitation of a decision on a site plan within 65 days from submission to the City on the City Planner and Planning Commission, stating "[t]he city planner or planning commission *shall render* a decision on a site plan within 65 days of its initial review of the site plan[.]" City Ordinance, § 122-310(d) (emphasis added). Upon information and belief, the City has timely processed site plans submitted to it within 65 days; including, having done so during the Pandemic. [Compl., at ¶ 70]. Early in the Pandemic, the City published guidance entitled "How to Apply for Permits in the City of Ypsilanti During the Covid-19 Shutdown." [Doc. 1-9]. Therein, the City stated planning and zoning "[s]taff is working remotely to administratively review permit applications, including: … some sketch plans" and that "[a]pplications that require approval from the Planning commission … will be reviewed by staff as received and prepared for the next possible … [Planning Commission] meeting" and further indicating that City staff "can send Zoning verification letters digitally." [Compl., at ¶ 70].

Neither Plaintiffs nor Moltus nor any employee thereof has been advised either verbally or in writing that the planning commission tabled consideration of

the Plan until a later meeting as required by the City Ordinances, § 122-310(c). <u>Id.</u> at ¶ 76. Because of this, Plaintiffs' are unable to appeal Defendants' decision on their Plan pursuant to City Ordinances, § 12-371 because no such decision has been made and Plaintiffs did not agree to an extension to the Plan's review period. *See* City Ordinances, § 122-310(d). As a result of this delay, Plaintiffs have been unable to repair the fire damage and YAT has been unable to open its constitutionally protected business. [Compl., at ¶ 78].

Plaintiff's filed their Complaint in this action on May 3, 2021. [Doc. 1]. Defendants waived service. [Doc. 6]. Nearly a month later, Defendant City filed a state court action (the "State Action") against Defendants MIC and YAT as well as International Amusement, LTD in the Washtenaw County Circuit Court. [State Court Complaint ("SCC") **Ex. 1** hereto]. And, On July 6, 2021, Defendants filed the motion to dismiss currently under consideration. [Doc. 9].

Ypsilanti's state court complaint sets forth three counts for relief: "Declaratory Judgment that Deja Vu has Extinguished, and Lost, any Lawful, Nonconforming Use," "Nuisance Abatement," and "Injunctive Relief." [**Ex. 1**, SCC, ¶¶ 52-72]. The SCC does not allege that any of the state court defendants are presently operating any business on the premises nor that they seek to resume operation of any business on the premises prior to obtaining the necessary municipal approvals. [<u>Id.</u>, generally].

For relief, the State Action seeks declaratory relief, and an injunction compelling the defendants to continue obeying the law. Specifically, the SCC prays for an order:

> (A)    declaring that Defendants have lost any right to continue a nonconforming use at the Property, including any of the areas of the building shown in Exhibit A;

(B)    declaring that continuance of any nonconforming use at the Property, including in any of the areas shown in Exhibit A, is a nuisance per se and ordering the nuisance abated;

(C)    permanently enjoining Defendants from continuing a nonconforming use at the Property, including any of the areas of the building shown in Exhibit A; and

(D)    such other relief as the court deems equitable and just.

[**Ex. 1**, SCC at p. 13].

## **ARGUMENT**

## I.   **ONLY EXCEPTIONAL CASES WARRANT A FEDERAL COURT ABSTAINING FROM A SUIT SEEKING TO VINDICATE FUNDAMENTAL CONSTITUTIONAL RIGHTS.**

Defendants rightfully do not dispute this Court's authority to hear Plaintiff's claims. "[F]ederal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013) (citing New Orleans Pub. Serv, Inc. v. Council of City of New Orleans ("NOPSI"), 491 U.S. 350, 373 (1989)). "Abstention from the exercise of federal subject matter jurisdiction is the *exception*, not the rule." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976) (emphasis added); *see also* Zwickler v. Koota, 389 U.S. 241, 248 (1967) ("Congress imposes the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims."); CLT Logistics v. River W. Brands, 777 F. Supp. 2d 1052, 1056 (E.D. Mich. 2011) (quoting Colorado River, 424 U.S. at 813) ("When a court has subject matter jurisdiction, abstention 'is the exception, not the rule.'").

The Supreme Court:

> [R]epeatedly has stated that the federal courts have a '***virtually unflagging obligation***' to exercise their jurisdiction except in those ***extraordinary circumstances*** 'where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'

Deakins v. Monaghan, 484 U.S. 193, 203 (1988) (emphasis added) (quoting Colorado River, 424 U.S. at 813 and others).

"A federal court owes no duty to abstain in deference to a state court when a federal constitutional question is at issue." Associated Gen. Contractors of Ohio, Inc. v. Drabik, 214 F.3d 730, 740 (6th Cir. 2000) (citing England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411, 415-16 (1964) (noting the "primacy of the federal judiciary in deciding questions of federal law")). More importantly, however, the federal judiciary has a special obligation to protect First Amendment rights from state deprivation, regardless of any "policy of judicial restraint." Procunier v. Martinez, 416 U.S. 396, 405 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401 (1989); Zwickler, 389 U.S. at 252; *see also* Steffel v. Thompson, 415 U.S. 452, 472 (1974) ("When federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3)—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to federal courts to protect constitutional rights."). Simply put, "'[t]he right of a party plaintiff to choose a Federal court when there is a choice cannot be properly denied.'" NOPSI, 491 U.S. at 359 (quoting Willcox v. Consol. Gas Co., 212 U.S. 19, 40 (1909)).

Here, this Court should *not* abstain from its unflagging obligation to exercise its jurisdiction specifically because, 1) this case comes before it subject to federal question jurisdiction [Compl., at ¶ 3]; 2) presents federal constitutional issues [id., at ¶¶ 82-87 (First Amendment retaliation); ¶¶ 88-93 (various violations of First and Fourteenth Amendment rights)]; and 3) specifically involves the federal judiciary's "special obligation to protect First Amendment Rights" from state deprivation.

*Procunier*, 416 U.S. at 405; [Compl., at, *e.g.*, ¶ 89 (noting the various ways Defendants are attempting to silence and/or target Plaintiffs to silence their speech and expression)]. Additionally, as explained in the two sections that follow, the prerequisites for Younger abstention are not met and the bad faith and harassment exceptions to Younger are present.

## II. YPSILANTI'S MERITLESS STATE COURT "ENFORCEMENT" ACTION DOES NOT TRIGGER <u>YOUNGER</u> ABSTENTION.

The State Action is nothing more than a second-filed declaratory judgment action masquerading as a nuisance abatement action. Because the State Action seeks no alteration of the status quo, it lacks the necessary coercive component to trigger application of Younger. As Defendants note, courts typically look at three factors to determine whether Younger abstention is warranted: (1) Are there ongoing state judicial proceedings?; (2) Do the proceedings implicate important state interests?; and (3) Is there an adequate opportunity in the state proceedings to raise constitutional challenges? <u>Exec. Art Studio, Inc. v. City of Grand Rapids</u>, 179 F. Supp. 2d 755, 758 (W.D. Mich. 2001) <u>aff'd</u>, 391 F.3d 783 (6th Cir. 2004) (citing <u>Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982)). Nevertheless, abstention can be unwarranted even where the factors, facially, appear to be satisfied. <u>Exec. Art Studio, Inc. v. City of Grand Rapids</u>, 391 F.3d 783, 791 (6th Cir. 2004). The nature of state civil proceedings are especially important, and those proceedings must be coercive in nature for abstention to apply. <u>Exec. Art Studio</u>, 179 F. Supp. 2d at 759.

The Court need only begin where the City wishes for the State Action to end. As reproduced above, the City seeks two forms of declaratory relief and an injunction precluding Defendants from "continuing" a nonconforming use on the Premises. [**Ex. 1**, SCC at p. 13]. Still, nowhere in the SCC does the City allege that any Plaintiff seeks to *continue* its nonconforming use prior to obtaining proper legal

authorizations. It is true that Plaintiffs possess a nonconforming use right to continue an adult regulated use on the Property and wish to do so, but neither have any intention of doing so without proper authorization. Nor can such an intention be inferred from any action Plaintiffs have taken. Rather, quite the opposite is true. Reconstruction of the Property to accommodate the adult regulated use has come to a halt due to the City's unlawful moratorium on considering any type of site plan or building permit approval. Presently, due to the Property's current state, it is physically *impossible* for Plaintiffs to do that which the City's State Action seeks to restrain them from doing. If Plaintiffs intended to reconstruct and operate their adult use without City approval, they would have done so rather than submitting their site plan for Defendants' approval and initiating this action once it was clear no decision was forthcoming.

Simply stated, there is no ongoing use of the Property from which a nuisance, even a nuisance per se, could arise to be enjoin. In fact, this Court declined to find a nuisance per se under nearly identical circumstances. <u>Taylor Novelty & Toy v. City of Taylor</u>, 1988 U.S. Dist. LEXIS 19440, at *113 (E.D. Mich. Mar. 7, 1988). In <u>Taylor Novelty</u>, the plaintiff opened and operated for one day prior to the effective date of certain zoning amendments; ostensibly, for it to secure nonconforming use rights. <u>Id.</u> at *11, ¶ 40, *113.

The defendant in <u>Taylor Novelty</u> asserted that "continued use and occupancy of the property at 8950 Telegraph Road is a nuisance per se under M.C.L.A. § 125.587." <u>Id.</u> at *112

This Court disagreed and refused to enjoin the plaintiff. It reasoned:

> In this matter, there is ***no*** evidence that Plaintiff and Michigan Reef intend to use the property in violation of any of Defendant's Ordinances. The record has been clear that except for one instance, the property has not been used. On that one occasion when the property was operating, the Defendant brought a criminal complaint against the Plaintiff. The

14

complaint was later dropped by the City. Other than that isolated instance, there is **no** evidence that Plaintiff is "using" the property in violation against any City Ordinances. Therefore, Defendant's request for this Court to declare 8950Telegraph a **nuisance per se** is not proper under Michigan law.

Id.

The provision cited in <u>Taylor Novelty</u> has since been replaced in the Michigan Zoning Enabling Act by M.C.L.A § 125.3407, which similarly reads: "Except as otherwise provided by law, a [1] use of land or a dwelling, building, or structure, including a tent or recreational vehicle, [2] used, erected, altered, razed, or converted [3] in violation of a zoning ordinance or regulation adopted under this act is a nuisance per se." (bracketed numbers added).

Indeed, the City focuses on the "use" of the building as an adult regulated use since there is no violation of the zoning ordinance except in relation to the use. And, it is only the *use* of the building the City seeks to enjoin. The City admits as much in its prayer for relief, which seeks a declaration that "*continuance* of any nonconforming use at the Property . . . is a nuisance per se . . . ." [SCC at p. 13 (emphasis added)]. The City's State Action seeks nothing more than to enjoin Plaintiffs to obey the law—actions Plaintiffs *are already doing*. Such injunctions, "that merely instruct[] a party to 'obey the law[,]' [are] disfavored." <u>Bazzy Invs. v. City of Dearborn</u>, No. 16-10879, 2018 WL 10962765, at *7 (E.D. Mich. Aug. 2, 2018) (collecting cases); <u>Perez v. Ohio Bell Tel. Co.</u>, 655 F. App'x 404, 411–12 (6th Cir. 2016) (same and collecting additional cases).

Importantly, setting aside the meritless nuisance abatement action, Ypsilanti's remaining claims for declaratory relief as to the Property's nonconforming use status, are not, by themselves, quasi-criminal enforcement actions that would require <u>Younger</u> abstention.

Simply stated, asking a state court to order the state court defendants to continue obeying the law is not a coercive action of sufficient interest to trigger

<u>Younger</u> abstention. The posture of the state action is far from being "akin to [a] criminal prosecution[ ]." <u>Sprint Commc'ns.</u>, 571 U.S. at 72.

## III. THE BAD FAITH EXCEPTION APPLIES TO MAKE <u>YOUNGER</u> ABSTENTION INAPPROPRIATE.

Assuming, *arguendo*, that <u>Younger</u> abstention in favor of the State Action could be warranted, abstention would still be inappropriate because the State Action falls within the bad faith exception to the <u>Younger</u> abstention doctrine. The State Action constitutes bad faith because 1) it is a continuation of the City's efforts to harass Plaintiffs and chill their First Amendment activities; 2) it is brought without a reasonable expectation of obtaining relief; and 3) it is brought solely for the purposes of forum-shipping.

"Even if abstention is warranted, however, a plaintiff still has the opportunity to show that an exception to <u>Younger</u> applies. These exceptions include bad faith, harassment, or flagrant unconstitutionality of the statute or rule at issue." <u>Doe v. Univ. of Ky.</u>, 860 F.3d 365, 371 (6th Cir. 2017) (citing <u>Fieger v. Thomas</u>, 74 F.3d 740, 750 (6th Cir. 1996)); *see also* <u>Cullen v. Fliegner</u>, 18 F.3d 96, 103-04 (2d Cir. 1994) (Younger inapplicable where state proceedings are being undertaken in bad faith or for purposes of harassment). In addition, "abstention is not required when the claim is that the state's laws are being enforced maliciously or in bad faith." <u>Show-World Ctr., Inc. v. Walsh</u>, 438 F. Supp. 642, 650 (S.D.N.Y. 1977) (citing <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 611 (1975); <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 489-90 (1965)). "Bad faith and harassing [state proceedings] also encompass those [state proceedings] that are initiated to retaliate for or discourage the exercise of constitutional rights." <u>Lewellen v. Raff</u>, 843 F.2d 1103, 1109-10 (8th Cir. 1988) ("a prosecution [] brought in retaliation for or to discourage the exercise of constitutional rights 'will justify an injunction regardless of whether valid convictions could be obtained.'" (quoting <u>Fitzgerald v. Peek</u>, 636 F.2d 943, 945 (5th

16

Cir. 1981); citing <u>Younger</u>, *supra*; <u>Dombrowski</u>, *supra*; and <u>Heimbach v. Village of Lyons</u>, 597 F.2d 344, 347 (2d Cir. 1979) (allegation that state criminal prosecution was initiated to chill First Amendment rights sufficient to remove <u>Younger</u> bar against federal court interference)).

Plaintiffs here specifically alleged that, in retaliation for, and to prevent Plaintiffs from, engaging in First Amendment activity it disfavors, the City 1) is interpreting and applying its zoning ordinance; 2) is failing to apply its zoning ordinance when approvals are requested; and 3) has issued an express moratorium on necessary approvals for the Property. [*See, e.g.,* Compl. at ¶¶ 44-77]. The City's refusal to even consider applications from Plaintiff constitutes bad faith by itself. Defendants improperly withheld the state law process from Defendants for consideration of their application for site plan approval and now have the audacity to claim that Plaintiffs must be limited to the state law process.

Undeniably in response to the prospect of being held responsible for its conduct, the City seeks a state court order permitting it to continue its conduct in perpetuity—forever banning Plaintiffs from engaging in First Amendment activity at the Property. Thus, because the State Action is a continuation of, and seeks further continuation of its inappropriate conduct, and malicious enforcement and non-enforcement of the very same provisions at issue in the present litigation, abstention is not warranted.

Secondly, the State Action constitutes bad faith because it was brought without a reasonable expectation of obtaining valid relief. In the criminal context, bad faith includes where "a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." <u>Lewellen</u>, 843 F.2d at 1109 (quoting <u>Kugler v. Helfant</u>, 421 U.S. 117, 126 n. 6 (1975)). Here, as described in greater detail in the previous section, Plaintiffs have announced no intent and have engaged in no action which would indicate they intend to resume their adult regulated use without

obtaining the necessary approvals that Defendants are unlawfully and unconstitutionally withholding. There is simply no need for the State Action except, of course, to both further harass and damage Plaintiffs, and to seek a perceived more favorable forum.

Finally, the State Action amounts to bad faith because the only purpose the suit serves, other than to harass Plaintiffs, is forum shopping. Forum shopping is a form of bad faith. *See, e.g.*, First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 519 (6th Cir. 2002) ("bad faith means improper purpose"); In re Ayoub, No. 10-62790, 2018 WL 2228174, at *12 (Bankr. E.D. Mich. May 14, 2018) (parties "engaged in bad faith by utilizing the judicial process for an improper purpose" including "forum shopping"). Again, the timing of the City's State Action is determinative. *See* Guillemarg Gionorio v. Contreras Gomez, 301 F.Supp.2d 112, 130 n. 5 (D. P.R. 2004) (timing of "Commissioner's order," issued after federal complaint could support inference of bad faith); Lewellen, 843 F.2d at 1109-13 (discussing the timing of state court proceeding in which plaintiff was involved).

Instead of filing or initiating any form of enforcement action against Defendants since the complained of condition was originally identified in 2019, the City waited until after Plaintiffs were no longer actively operating the adult regulated use and had filed suit in federal court to hold the City accountable for its conduct. This is retaliation and bad faith forum shopping plain and simple.

## IV.   EVEN IF ABSTENTION WERE WARRANTED, A STAY RATHER THAN DISMISSAL IS THE APPROPRIATE REMEDY.

Plaintiffs should not be deprived of their chosen federal forum to vindicate federal constitutional rights and their federal statutory (42 U.S.C. § 1983) claim for damages based on Ypsilanti's past and continuing acts in violation of those rights. The State Action defendants will be responding to the complaint by moving the state

court to dismiss the action. This forum should remain available for Plaintiffs' return once the State Action is dismissed.

The Sixth Circuit has held that when a plaintiff brings constitutional civil rights claims in federal court and the court finds Younger abstention to be proper, the district court should stay the case rather than dismissing it. Carroll v. City of Mount Clemens, 139 F.3d 1072, 1075 (6th Cir. 1998) (holding "the District Court should have stayed, not dismissed," the complaint); Kalniz v. Ohio State Dental Bd., 699 F. Supp. 2d 966, 975 (S.D. Ohio 2010) (same). The reasoning for this, Carroll explains, is to "protect against the possibility that [the plaintiff] could be deprived of the opportunity to present the merits of her damages claims in state court." 139 F.3d at 1075-76.

A stay may be appropriate where Younger abstention is triggered in relation to a § 1983 suit for damages. Los Altos El Granada Investors v. City of Capitola, 583 F.3d 674, 689-90 (9th Cir. 2009) (citing Gilbertson v. Albright, 381 F.2d 965 9th Cir. 2004) Where "damages are sought and Younger principles apply, it makes sense for the federal court to refrain from exercising jurisdiction *temporarily* by staying it hand until such time as the as the state proceeding is no[] longer pending). Id. at 689 (emphasis in original). "The Civil Rights Act of 1871, after all, guarantees "a federal forum for claims of unconstitutional treatment at the hands of state officials," and the settled rule is that "exhaustion of state remedies 'is *not* a prerequisite to an action under [42 U.S.C.] § 1983." Knick v. Township of Scott, Pennsylvania, --- U.S. ---, 139 S. Ct. 2162, 2167 (2019) (emphasis in original) (citing Heck v. Humphrey, 512 U.S. 477, 480 (1994); Patsy v. Board of Regents of Fla., 457 U.S. 496, 501 (1982).

Here, the state and federal questions are not inexorably intertwined. The state action seeks extinguish Plaintiff's nonconforming use and abate a nuisance. The present suit seeks damages for Ypsilanti's violation of Plaintiffs' constitutional

19

rights, as well as injunctive and declaratory relief permitting it to resume reconstruction and ultimately its adult regulated use. Even if all the issues raised in the State Action were required to stay in state court, once they are dispensed with in Plaintiffs' favor, there is no reason Plaintiffs should be required to maintain their constitutional claims and § 1983 suit in state court. Plaintiffs' claims would be largely in the form of counterclaims, rather than defenses, in the State Action.

Plaintiffs should not be deprived of their chosen federal forum for their federal claims simply because Ypsilanti filed a meritless enforcement action in state court in reaction to the present suit.

## **CONCLUSION**

Because there is no nuisance to enjoin; because the City's State Action seeks a disfavored injunction to enjoin Plaintiffs to continue following the law; and because the City's State Action is brought in bad faith as further retaliation against Plaintiffs, this Court should DENY Defendants' Motion to Dismiss based on <u>Younger</u>. In the alternative, if this Court is inclined to grant Defendants' motion, this Court should stay rather dismiss this action in order to preserve Plaintiffs' right to litigate their constructional claims against Defendants.

Respectfully Submitted,

Dated: July 27, 2021

*/s/ Matthew J. Hoffer*
Matthew J. Hoffer (P70495)
Matt@BradShaferLaw.com
Zachary M. Youngsma (P84148)
Zack@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Suite 2
Lansing, Michigan, 48906
T: 517-886-6560
F: 517-886-6565

*Attorneys for Plaintiffs*
*Ypsilanti Art Theatre Corp., and*

*M.I.C. Limited Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of July, 2021, I filed the forgoing document with the United States District Court for the Eastern District of Michigan via its CM/ECF system, thereby causing service upon all parties and their counsel of record by operation of the CM/ECF system.

*/s/ Matthew J. Hoffer*

Matthew J. Hoffer
**SHAFER & ASSOCIATES, P.C.**
